**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nannette Lynn Blessing, | No. CV-19-08148-PCT-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Nannette Lynn Blessing's Applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits by the Social Security Administration ("Commissioner") under the Social Security Act (the "Act"). Ms. Blessing filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. After reviewing the Plaintiff's Brief (Doc. 21, Pl. Br.), Defendant's Response (Doc.22, Def. Br.) and Plaintiff's Reply (Doc. 23, Reply), as well as the administrative record (R.), the Court reverses and remands the decision.

**I.    BACKGROUND[1]**

Plaintiff filed her Applications for SSDI and SSI benefits on January 16, 2015, alleging disability beginning January 17, 2013. (R. at 15). The Commissioner denied Plaintiff's Applications initially and upon reconsideration. (R. at 129, 159.) On December 18, 2017, Plaintiff appeared at a hearing before an administrative law judge ("ALJ"). (R. at 33.) The ALJ considered whether Plaintiff has been disabled since January 17, 2013,

---

[1] In lieu of providing a detailed summary of the entire medical record here, the Court will reference and incorporate certain evidence as appropriate in its analysis.

the date she filed her Applications. (*Id.*) The ALJ issued a written decision finding Ms. Blessing not disabled. (R. at 12.) On March 23, 2019, the Appeals Council denied review, making the decision final and ripe for this Court's review.[2] (R. at 1.)

The ALJ found Plaintiff had "severe"[3] impairments of internal derangement of the right knee, status-post arthroscopy of the right knee with partial medial and lateral meniscectomies, chondroplasty of tri-compartmental, resection of loose body, and minor synovectomy; mixed polyneuropathy; and right shoulder adhesive capsulitis, status-post repeat manipulation under anesthesia and arthroscopy with bursectomy and debridement. (R. at 18.) The ALJ additionally noted three "non-severe" medically determinable impairments: juvenile diabetes mellitus, cataracts, and osteoporosis. (*Id.*)

Ultimately, the ALJ evaluated the medical evidence testimony and concluded that that Plaintiff has not been disabled since January 17, 2013. (R. at 24.) The ALJ calculated Plaintiff's residual functional capacity[4] ("RFC") and found that she can perform "sedentary"[5] work. (R. at 19.) The ALJ acknowledged that Plaintiff was unable to perform any past relevant work, but determined that she had acquired transferable work skills from her past relevant work experiences. (R. at 23, 24.) The ALJ considered the testimony of the vocational expert and found that Plaintiff could work as an information clerk and that those jobs exist in significant numbers in the national economy. (R. at 24.) Accordingly, based on Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff not disabled. (*Id.*)

## II.     LEGAL STANDARDS

In determining whether to reverse an ALJ's decision, the district court reviews

---

[2] This Court may review the Commissioner's disability determinations under 42 U.S.C. § 405(g): "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." This Court may review Plaintiff's claims for Supplemental Security Income pursuant to 42 U.S.C. § 1383(c).
[3] An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).
[4] "[R]esidual functional capacity is the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).
[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . [and] involves sitting, a certain amount of walking and standing." 20 C.F.R. § 404.1567(a).

only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or if it is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance—it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*

To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled under the Act, the ALJ follows a five-step analysis. 20 C.F.R. § 404.1520(a); *see also Popa v. Berryhill*, 872 F.3d 901, 905-06 (9th Cir. 2017). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). At step one, the ALJ determines whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disable, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled; if not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and

determines whether the claimant can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step and determines whether the claimant can perform any other work in the national economy based on the claimant's age, education, work experience, and RFC. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff argues that the ALJ erred in evaluating her claim by: (1) misevaluating the medical opinions in the record and (2) improperly rejecting Plaintiff's symptom testimony. (Pl. Br. at 1-2.) The Court finds no reversible error in the ALJ's assessment of the medical opinions. The Court does, however, find that the ALJ erred in rejecting Plaintiff's symptom testimony.

### A. The ALJ appropriately weighted the assessments of Dr. Tilgner.

Plaintiff argues that the ALJ committed materially harmful and fundamental legal error by assigning only "little weight" to the assessments of Plaintiff's treating physician, Dr. Tilgner, to determine Plaintiff's work capacities, relying instead on opinions from an industrial insurance carrier examiner, a state agency examiner, and state agency nonexamining doctors. (*Id.*) The Commissioner responds that the ALJ properly assigned little weight to the physician's opinion and set forth specific reasons for doing so. (Def. Br. at 7.) The Court agrees with the Commissioner's finding.

While "[t]he ALJ must consider all medical opinion evidence" when assessing a claimant's RFC, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), there is a hierarchy among the sources of medical opinions. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) The regulations instruct that weight assigned to medical opinions is determined based on factors including the examining relationship, treatment relationship, the length and nature of treatment, supportability, consistency, and specialization, among other factors. 20 C.F.R. § 404.1527(c). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians,

and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A "special weight" is generally accorded to opinions of the claimant's treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823 (2003); *see also Orn*, 495 F.3d at 631 ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians.")

Similarly, "[t]he opinion of an examining physician is . . . [generally] entitled to greater weight than the opinion of a nonexamining physicians." *Lester*, 81 F.3d at 830. Nonetheless, despite the deference generally afforded to treating physicians, the ALJ is not required to rely on them. If a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in the [the] case record," the ALJ need not give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings).

The ALJ, rather than any particular physician, is ultimately responsible for determining the RFC. 20 C.F.R. § 404.1546(c). The ALJ must consider "all the relevant evidence in [the] case record," including medical records, medical opinions, and symptom testimony provided by the claimant's "family, neighbors, friends, and other persons." *Id.* § 404.1545(a)(3). If a treating physician's opinion is not given controlling weight, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) in assigning its relative weight. When rejecting a treating physician's testimony, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctor['s], are correct." *Orn*, 495 F.3d at 632 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Garrison*, 759 F.3d at 1012-13 ("[A]n ALJ errs when he . . . assigns [a medical opinion] little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion

is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

Plaintiff was seen by two treating physicians—Eung Jun Cha, M.D. and Theron Tilgner, D.O. Dr. Cha provided two reports in reference to Plaintiff's workers compensation claim. On Feb. 26, 2013, he found Plaintiff unable to return to work. Then on November 22, 2013, he found that she could perform sedentary work. The ALJ assigned "little weight" to Dr. Cha's opinions. (R. at 21.)

On November 30, 2015, Dr. Tilgner opined that Plaintiff is limited to sedentary work "with less than occasional ability to perform postural activities and a total restriction upon unprotected heights, moving machinery, and pulmonary irritants." (R. at 790.) The ALJ assigned "significant weight" to the opinion regarding sedentary work, because it is supported by Plaintiff's continued need for an assistive device and the medical records noting a successful right knee surgery with physical therapy. (R. at 21.) On February 2, 2017, Dr. Tilgner submitted an additional checklist opinion, in which he opined that Plaintiff could sit for only one to two hours and stand and/or walk two or less hours in an eight-hour workday. (R. at 826.) He additionally found she could only occasionally use her hands for grasping. (*Id.*) On December 21, 2017, Dr. Tilgner opined that Plaintiff needed to elevate and ice her right knee since January 2016. The ALJ assigned Dr. Tilgner's February 2, 2017 and December 21, 2017 opinions "little weight." (R. at 22.)

Anthony Theiler, M.D. examined Plaintiff for workers' compensation and found that she could perform sedentary work with the use of a cane and could improve with physical therapy. (R. at 880.) A subsequent examination by Dr. Theiler noted that based on objective evidence, Plaintiff's knee had improved and that she could do a range of sedentary work with the use of a cane or crutch as needed. (R. at 1056.) The ALJ assigned "significant weight" to Dr. Theiler's opinions. (R. at 22.)

Justin Garrison, D.O. examined Plaintiff on referral from the state agency and reviewed Plaintiff's records. (R. at 701.) Dr. Garrison observed the knee injury and some

reduced movement (R. at 704-07) but found she could perform a range of sedentary work with the use of a crutch if needed. (R. at 707-09.) The ALJ assigned "great weight" to Dr. Garrison's opinions. (R. at 22.)

Teresa Pavese, M.D. and Krishna Malik, M.D., both state medical nonexamining consultants, separately reviewed Plaintiff's record and determined that Plaintiff could perform a range of sedentary work. (R. at 80, 114.) The ALJ assigned "great weight" to the opinions of Drs. Pavese and Malik. (R. at 22.)

The ALJ assigned "little weight" to treating physician Dr. Cha's opinions, finding that he "simply checked a box finding the limitations without analyzing any additional limitations . . . [and] failed to cite to any objective testing or physical examinations to support these limitations." (R. at 21.)

The ALJ also assigned treating physician Dr. Tilgner's February 2, 2017 and December 21, 2017 opinions "little weight" due to multiple inconsistencies in his opinions. (R. at 22.) For one, the medical record shows no injuries to Plaintiff's hands, only her right shoulder, making his finding that "she could only occasionally grasp and frequently perform fine manipulation" unsupported by the medical record as a whole.

Also, Dr. Tilgner's opinion letter that Plaintiff "needed to elevate and apply ice to her right knee since January 2016" is inconsistent with his prior records and opinion. The need to elevate and ice Plaintiff's right knee had not been mentioned in prior submitted opinions, despite a space provided to report such instructions. The letter additionally contradicts Dr. Tilgner's notes in which he mentioned Plaintiff had started such treatment on her own despite no instruction to do so.

The Court finds that, although the ALJ assigned only "little weight" to Plaintiff's treating physician's later opinion in determining the RFC, the "ALJ acted in accordance with [her] responsibility to determine the credibility of medical evidence, and [she] gave specific, legitimate reasons for discrediting" Dr. Tilgner's later opinions. *Thomas*, 278 F.3d at 958. And while the Court notes Plaintiff's argument that "disability determinations are not the result of a democratic vote," (Reply at 6) it does not agree with

Plaintiff's charge that the ALJ used a sort of straw poll vote in according weight to Dr. Tilgner's opinion—the ALJ found the later opinions unsupported by and inconsistent with the record as a whole and accordingly assigned it weight. *See Tonapetyan*, 242 F.3d at 1149; *see also* 20 C.F.R. § 404.1527(c).

### B. The ALJ erred in rejecting Plaintiff's symptom testimony.

Plaintiff argues that the ALJ committed material error by rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record as a whole. (Pl. Br. 23.) The Court agrees.

Plaintiff testified that she could not work because of right knee pain and swelling, neuropathy in her feet and legs, and shoulder pain. (R. at 46.) She stated that her shoulder pain causes problems lifting, carrying, and reach and completing everyday tasks like doing her own hair and putting on shirts over her head. (R. at 49.) She testified that she had issues controlling her blood sugar from lack of exercise. (R. at 58.) She stated that every few hours during the day, she had to elevate her right leg and ice her knee and shoulder. (R. at 52.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d at 1014; 20 C.F.R. § 404.1529(c)(2)-(3). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).

Second, the ALJ must then evaluate the statements in context of the (1) objective medical evidence and (2) other evidence in the records. *See* C.F.R. § 404.1529(c)(2)-(3). The ALJ may then "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This requirement is meant to prevent an ALJ from "arbitrarily discredit[ing]" the claimant's subjective testimony. *See Thomas*, 278 F.3d at 958.

Here, the ALJ found the first step threshold met, stating "[a]fter careful consideration of the evidence, the undersigned finds the claimant's medically determinable impairments could reasonably cause the alleged symptoms . . ." (R. at 20.) In evaluating the second step, the ALJ found that Plaintiff's subjective testimony should be afforded less weight, because it was inconsistent with the medical record as a whole, stating only the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms fail to correspond with the explanations and evidence cited . . ." (*Id.*) It is error to reject symptom testimony solely because it is not fully corroborated by the medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). While the ALJ outlined Plaintiff's relative medical history and topically mentioned "effectiveness of treatment" and Blessing's "activities of daily living" (R. at 20), she did not provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

Thus, the Court disagrees with ALJ's rejection of Plaintiff's symptom testimony based on a general conclusory finding of inconsistency with the record. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). The Court agrees with Plaintiff's arguments and accordingly reverses the ALJ's decision.

## IV. CONCLUSION

The Court finds that the ALJ committed an error in discounting Plaintiff's symptom testimony for failure to provide specific, clear, and convincing reasons for doing so. The Court finds that the appropriate remedy is to remand for additional administrative proceedings. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

/

/

/

Accordingly,

**IT IS ORDERED** reversing the decision of the Administrative Law Judge and remanding for further administrative proceedings consistent with this Order.

**IT IS ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 14th day of August, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge